MEARES AND MANNING, RECEIVERS, v. FINLAYSON.

1. RES JUDICATA.—Question in this case whether purchaser of property can plead usury to bond of grantor, payment of which he had assumed, is *res judicata.*

2. USURY—BUILDING AND LOAN ASSOCIATION.—IN FORECLOSURE by insolvent building and loan association against a borrowing member, the rule is that if payments on stock, interest, premiums, &c., amount to enough to pay the debt in full, foreclosure will not be decreed. The doctrine of application of payments of usurious interest announced in *Butler* v. *Butler,* 62 S. C., is not intended to apply to insolvent building and loan association contracts.

Before GAGE, J., Chesterfield, October term, 1900. Reversed.

Action by Iredell Meares and P. B. Manning, receivers of Carolina Interstate Building and Loan Association, against Henry W. Finlayson. From Circuit decree in favor of plaintiffs, defendant appeals.

*Messrs. Edward McIver* and *Stevenson & Matheson,* for appellant. *Messrs. Stevenson & Matheson* cite: *As to applications of payments to insolvent building and loan association:* 44 S. C., 128.

*Mr. R. T. Caston,* contra, cites: *As to application of usurious interest collected:* 27 S. C., 111; 30 S. C., 390; 62 S. C., 175; 58 S. C., 244; 62 S. C., 192. *As to right of grantee of mortgaged property to recover usurious interest paid by his grantor:* 47 S. C., 398; 39 S. C., 192; 2 Pom. Eq. Jur., sec. 937; 27 Ency., 949; 29 S. C., 501; 58 S. C., 244; 62 S. C., 175, 165.

April 16, 1902. The opinion of the Court was delivered by

MR. JUSTICE JONES. Plaintiffs instituted this suit to foreclose two real estate mortgages executed to the Carolina Interstate Building and Loan Association, one by the defendant, Finlayson and the other by L. H. Fesperman, payment of which was assumed by Finlayson, who had purchased the mortgaged premises. The defendant plead usury. The cause was first heard before Judge Ernest Gary, who made decree sustaining the plea of usury and ordering a reference to S. W. G. Shipp, Esq., to compute the amount due on the bonds and mortgages set forth in the complaint, under sec. 1390 Revised Statutes. This judgment, on appeal therefrom, was affirmed by this Court, 55 S. C., 105. Thereafter a reference was had under said order, the referee holding that the question of usury and the right of Finlayson to plead usury as to the Fesperman mortgage were concluded against plaintiffs by the affirmance of the order of Judge Gary, and applying the penalty of usury under sec. 1390 and the rules regulating settlements between insolvent building and loan associations and borrowing members, as announced in *Buist* v. *Bryan,* 44 S. C., 128, reported that nothing was due upon the mortgages, inasmuch as the payments of dues and interest exceeded the sums bor-

rowed, no interest thereon being recoverable because of usury. The referee also reported, with reference to the Fesperman mortgage, that the result would be the same if only payments of dues and interest thereon by Finlayson be considered, and excluding all payments made by Fesperman previous to the transfer to Finlayson. On exceptions to this report, the Circuit Court, Judge Gage presiding, held (1) that the referee erred in construing the decision of the Supreme Court as concluding the question as to Finlayson's right to set up usury with reference to the Fesperman mortgage, and (2) that all payments made and accepted as interest, as distinguished from instalments on stock, should not be credited on the principal debt, for the reason that debtor and creditor had agreed to make a different application, and had in fact made it. From this decree the defendant appeals, and upon the exceptions taken argues two questions or propositions.

1. That the questions considered by Judge Gage were *res judicata* by the former decision in this case, under the issues as then presented.

2. That the rule announced in *Butler* v. *Butler*, 62 S. C., 165, does not apply in the case of a suit involving a settlement between an *insolvent* building and loan association and a borrowing member.

We sustain the first proposition, in so far as it relates to the Fesperman mortgage, Judge Gary having sustained the plea of usury made as to both mortgages, and ordered a reference to compute the amount due under sec. 1390, and that judgment having been affirmed by this Court, all issues involving the *right* of Finlayson to plead usury as to the Fesperman mortgage was necessarily concluded. Plaintiff's ninth exception to the order of Judge Gary claimed specifically that he erred in holding that Finlayson could plead usury against the Fesperman bond and mortgage, and this Court, speaking through Mr. Justice Pope, whose view in this regard was concurred in by the other members of the Court, dissenting on other grounds,

said, "While Mr. Finlayson, as the assignee of Fesperman, could not hold the Carolina Interstate &c. Association to the penalties for usury—because the plea of usury has been held by the Courts of this State as a personal privilege—still, when he comes to settle with the association on a contract which he has made with such association, he can invoke the defense, as a protection, as far as it extends, to the payments made by himself." This language, in whatever way it may be construed, could not alter the legal effect of the judgment affirming the order of Judge Gary, in view of the exception made thereto; for if such exception had been sustained, a judgment of affirmance could not have been properly made. Furthermore, this particular matter loses all practical importance, for the referee has found that rejecting all payments made by Fesperman and considering only the payments made by Finlayson, the result would be the same, viz: that the payments of dues and interest exceeded the principal debt.

Before considering whether the matter of crediting the principal debt with payments alleged to have been made and accepted as interest was adjudicated in the former appeal, we will notice the second proposition. The case of *Buist* v. *Bryan,* 44 S. C., 125, approved in *Carpenter* v. *Lewis,* 60 S. C., 40, establishes the rule governing settlements between an insolvent building and loan association and a borrowing stockholder. Some of the rules therein stated are, that the appointment of a receiver terminates the contract with the mortgagor as originally contemplated; that upon the determination of his contract with the association as originally contemplated, the mortgagor is entitled as credits on his mortgage both for the amount paid as interest and also as dues on his shares of stock, that where the amount of dues and interest paid aggregate the mortgage debt, foreclosure will not be sustained. Now the case of *Butler* v. *Butler,* 62 S. C., 165, referred to with approval in *Bird* v. *Kendall,* 62 S. C., 178, decides that sec. 1390 only prohibits the *recovery*

of any interest upon a contract tainted with usury in its inception, or subsequently becoming so tainted by the receipt of unlawful interest, in a proceeding to enforce such contract, and that there is nothing in the statute which provides that interest paid prior to the commencement of an action upon a contract infected with usury and credited as such shall be regarded as a payment upon the principal sum loaned; that said section does not purport to disturb an executed transaction, The Circuit Court was evidently impressed with this view and sought to apply it to the case before him. We are of the opinion, however, that the rule stated in Butler *v.* Butler is not applicable to insolvent building and loan associations, without overthrowing the rule stated in Buist *v.* Bryan, which is not intended to be done. From the peculiar methods adopted in many building and loan associations which seek to secure for money advanced by them a greater rate of interest than allowed by law, interest is often secured under the name of "premium, stock, dues," and the like. For example, sometimes the borrower is required either to double his subscription of stock or to pay double dues on a particular number of shares, or some device to effectuate such result, by which the borrower pays double the amount on stock dues paid by the non-borrower. The element of usury is generally found in the matter of stock dues paid by a borrowing member in excess of what he would pay if he remained a non-borrowing member and *in addition* to the stipulated interest *eo nomine.* Usury is declared to exist in such cases because, looking to the substance and not to the mere form, the real interest is found to be the stipulated interest by name, plus the payments (by whatever name called) which a borrower is required to pay as a borrower in excess of such stock dues or other payments as he would have been required to pay if he had remained a non-borrowing stockholder. It will thus be seen that the rule applicable to insolvent building and loan associations announced in Buist *v.* Bryan and approved in Carpenter *v.* Lewis, would be frustrated if all stock dues and interest which go to make

up usurious interest, paid and accepted as such, shall be deemed executed payments of usurious interest and not applicable to the payment of the principal debt. It may be added, also, that under the peculiar scheme of such associations by which the borrower's principal debt is intended to be cancelled by his stock when it matures through the accumulation and use of all stock dues, interest and other income to that end, the rule in Butler *v.* Butler would not seem to be applicable, as such payments are all designed for the ultimate payment of the principal debt. When, therefore, Judge Gary sustained the plea of usury and ordered a computation of the amount due, under sec. 1390, and this Court affirmed such judgment, the legal effect was to adjudge the plaintiffs liable to the penalty of forfeiture of all interest, and in view of the fact that plaintiffs represented an insolvent building and loan association, to require the application of all payments of stock dues and interest, &c., to the cancellation of the principal debt. The referee having found that such payments exceeded the principal debt, and there being no question as to the correctness of such conclusion, nothing was left but to dismiss the complaint, and the Circuit Court erred in not so doing.

The judgment of the Circuit Court is reversed and the complaint is dismissed.